MOORE, *Appellant,* v. KANSAS CITY, FT. SCOTT AND MEMPHIS RAILWAY COMPANY.

Division One, December 8, 1898.

1. **Negligence:** CHOOSING DANGEROUS COURSE. An employee, who has a choice of two ways of performing his labor for his master, one of which is perfectly safe, the other subject to risks and dangers, and voluntarily chooses the latter, is guilty of contributory negligence, and can not recover for the injuries resulting to him from such choice.

2. ————: SWITCHMAN: USUAL PRACTICES. If a switchman, by following the usual practices of switchmen on his road as to the manner of coupling cars, with which he was perfectly conversant, could have made the coupling without injury to himself, but voluntarily chose a course he knew to be dangerous, he can not charge his injury to the negligence of the road in failing to furnish a kind of link, which, if used by him, would have avoided his injury.

3. ————: ————: COUPLING CARS: LINKS: DRAWHEADS: CASE STATED. Plaintiff, for ten years employed by a railroad company as a switchman and fully informed as to the practices of switchmen on the road, was injured while trying to couple cars with drawheads of unequal height, and in his petition charges the railroad's negligence to be its

failure to furnish bent instead of straight links for making such coup-
lings. The evidence showed that the company had never used bent
links; that the coupling could have been made without danger by
placing a chip or link under the lower drawhead; and that the plain-
tiff was fully aware of the danger in attempting to make the coupling
by going between the cars, placing a straight link in the higher draw-
head, and pressing down the link as the other car approached. He
tried to excuse his course by saying he had not sufficient time in
which to prop up the drawhead after one attempt before the car came
again, and therefore he held the link in his hand, which was crushed.
But the evidence also showed that he was free to take whatever time
was needed to make the coupling in safety, by propping up the draw_
head of the approaching car, which was the usual way. *Held*, that
plaintiff could not recover, and these facts having been shown by his
own witnesses, a demurrer to the evidence was properly sustained.

*Appeal from Greene Circuit Court.* — HON. JAMES T.
NEVILLE, Judge.

AFFIRMED.

*Wm. O. Mead* and *T. T. Loy* for appellant.

(1) The defendant was guilty of negligence when
it failed to furnish plaintiff a properly constructed
crooked link to enable him to make the coupling with
reasonable safety, and even though plaintiff knew the
effort to make such coupling with a straight link was
dangerous, yet if he believed it could be done with care
and caution on his part, and he did exercise care and
caution in the effort to make such coupling, then he
was not guilty of contributory negligence, defendant is
liable for his injuries received in such effort, and the
case should have been submitted to the jury. *Hamil-
ton v. Rich Hill Mining Co.*, 108 Mo. 364; *Mahaney v.
Railroad*, 108 Mo. 191; *O'Mellia v. Railroad*, 115 Mo.
205; *Gutridge v. Railroad*, 105 Mo. 520; *Nichols v.
Crystal Plate Glass Co.*, 126 Mo. 55; *Francis v. Rail-
road*, 127 Mo. 658; *McMullin v. Railroad*, 60 Mo. App.
231; *Beard v. American Car Co.*, 63 Mo. App. 382;
*Huhn v. Railroad*, 92 Mo. 440; *Warner v. Railroad*, 62

Mo. App. 184; *Railroad v. Box*, 1 Am. R. R. and Cor. Rep. 226; *Scley v. Railroad*, 2 Am. R. R. and Cor. Rep. 151; *Ft. Wayne v. Breese*, 2 Am. R. R. and Cor. Rep. 237; *Railroad v. Sampson*, 4 Am. R. R. and Cor. Rep. 406; *Railroad v. Higgins*, 14 S. W. Rep. 653; *Van Gent v. Railroad*, 45 N. W. Rep. 520. It is immaterial whether the high and low drawheads were the result of faulty construction or want of repair; if they existed, it was the duty of defendant to supply the plaintiff with a proper link to couple them together in safety. *Gutridge v. Railroad*, 94 Mo. 468. (2) There can not be found any other reason why the trial court sustained defendant's demurrer to the evidence than that the plaintiff was guilty of contributory negligence. This question is one for the jury, unless the testimony so clearly establishes it that reasonable minds may not differ. *Webber v. Railroad*, 100 Mo. 194; *Davis v. Railroad*, 46 Mo. App. 180; *Cook v. Railroad*, 19 Mo. App. 226; *Drain v. Railroad*, 86 Mo. 574; *Beaty v. Life Ass'n*, 21 C. C. A. 227. (3) The presumption is that plaintiff was careful and cautious and before he can be charged with contributory negligence it must be proved as any other fact. *Davis v. Railroad*, 46 Mo. App. 180; *Schlereth v. Railroad*, 96 Mo. 509; *Hudson v. Railroad*, 101 Mo. 13. (4) The facts in the case of *Hulett v. Railroad*, 67 Mo. 239, are unlike in this case, in that, the defendant in that case had and kept on hand crooked links for use, and the plaintiff could have had one for the taking for use, but chose to take the risk rather than the trouble to get one, while in the case at bar the defendant furnished none for use at or before the injuries complained of, leaving no alternative for plaintiff but to couple the cars with a straight link or quit the service of defendant.

*Wallace Pratt* and *Goode & Cravens* for respondent.

(1)   Plaintiff voluntarily undertook to make this coupling which required unusual caution in an unusually reckless manner, and can not, therefore, recover for the injury received. *Hulett v. Railroad*, 67 Mo. 239; *Goins v. Railroad*, 37 Mo. App. 221; *Brewer v. Railroad*, 56 Mich. 620; *Railroad v. Gildersleeve*, 33 Mich. 133; *Kelley v. Railroad*, 23 N. W. Rep. 890; *Law v. Railroad*, 21 S. W. Rep. 648; *Turbaville v. Railroad*, 12 So. Rep. 63; *Carlson v. Sioux Falls Co.*, 59 N. W. Rep. 217; *McDonald v. Railroad*, 13 So. Rep. 706. (2) Where a servant uses machinery known to be defective he is bound to use special precaution, and if he fails to do so and is injured he can not charge the master with liability.   Bailey on Master's Liability for Injuries to Servants, 169; *Railroad v. Roy*, 5 Ill. App. 82; *Winkler v. St. Louis Basket & Box Co.*, 137 Mo. 398; *Marshall v. Hay Press Co.*, 69 Mo. App. 256.   And when the work could have been easily done by a safer mode, but the servant, because it was more convenient, chose a perilous one, he can not recover. *St. Louis Bolt & Iron Co. v. Brenhan*, 20 Ill. App. 555; *St. Louis Bolt & Iron Co. v. Burke*, 12 Ill. App. 369; *Anderson v. Railroad*, 39 Minn. 523. (3) The testimony of both the plaintiff and his witness Daly, is to the effect that plaintiff attempted to couple the cars in an unusual, careless way. Plaintiff's negligence was, therefore, established by himself, and it was the duty of the court to sustain the demurrer.  Where the question of plaintiff's negligence depends on conflicting testimony, it is for the jury to decide; not so, however, when it appears from his own proof, or from the cross-examination of his witnesses that he was guilty of carelessness which contributed to the accident. *Buesching v. Gaslight Co.*, 73 Mo. 219;

*Powell v. Railroad*, 76 Mo. 83; *Zimmerman v. Railroad*, 86 Mo. 457. (4) If, as plaintiff testifies, it was not the custom of defendant to furnish crooked links with which to couple drawheads of unequal heights, he knew that fact, and, having in spite of it continued for years in defendant's employ, making such couplings every day as he swears without crooked links, he is conclusively presumed to have assumed the risk, as incident to his employment. *Devitt v. Railroad*, 50 Mo. 302; *Winkler v. St. Louis Basket & Box Co.*, 137 Mo. 399; *Jackson v. Railroad*, 104 Mo. 448; *Alcorn v. Railroad*, 108 Mo. 87; *Holloran v. Union Iron & Foundry Co.*, 133 Mo. 470; *Lacey v. Hannibal Oil Co.*, 129 Mo. 32; *Burnes v. Railroad*, 129 Mo. 41; *Junior v. Electric Light & Power Co.*, 127 Mo. 83; *Keegan v. Kavanaugh*, 62 Mo. 232; *Smithy v. Railroad*, 69 Mo. 32; *Porter v. Railroad*, 71 Mo. 66.

WILLIAMS, J.—Plaintiff sues for damages on account of personal injury received while in defendant's employ as a switchman.

The facts, upon which he predicates the liability of the railway company, are these: It was plaintiff's duty under his employment to couple together the cars in making up freight trains in its yards at Springfield. He was engaged in so doing on the twelfth of January, 1895, when it became necessary for him to make a coupling between two cars, the drawheads of which were of unequal height. Defendant failed to furnish crooked links for that purpose, and plaintiff was compelled to use a straight link. This was the only kind provided. The failure to supply crooked links for use upon such occasions is the negligence counted upon in the petition. It is claimed that a straight link is unsuitable and not reasonably safe for a switchman to use, when the drawheads are not of the same height.

At the time plaintiff was hurt, eleven or twelve cars had been placed in the train and were standing upon the main track. Another car was brought up and placed in such position that it would run down grade to the stationary cars above mentioned, to which it was to be attached. It was then cut loose from the engine, and ran down to the other cars. The drawhead of the moving car was lower than that of the one standing still. The link was in the *lower* drawhead, and as the cars came together the *first* time, plaintiff tried to make the coupling by raising the link so that it would connect with the higher drawhead of the other car. He failed in this attempt, and says that, when the moving car struck those standing on the track, it "bounced back," but he could not tell how far. He afterward changed the link to the *higher* drawhead. The other car was then hit by one set in by the engine on the same track, and began again to move toward those composing the train. Plaintiff, as they came together the second time, made another effort to effect the coupling. He attempted with his right hand to force the link down to the lower drawhead, but failed, and his hand was caught and badly mashed and amputation of several of his fingers became necessary.

The evidence showed that plaintiff was thirty-two years old and was an experienced switchman. He had been railroading for a number of years and had been in defendant's employ probably ten years or more. It further appeared that defendant had never furnished its employees with crooked links to make such couplings.

Plaintiff testified that he could have *raised the lower drawhead*, and propped it up, and, in that way, have made the coupling without placing his hand in the dangerous position where it was hurt, if he had

had time to do so between the movements of the car. He says he did not do this for want of time; that, as the cars were coming together, it would have been more dangerous for him to have gone between them to raise the lower drawhead than to do as he did. The evidence does not disclose any reason why he might not have waited until he could make the coupling in a proper and safe way. The testimony does not show that he was required to make it when the cars came together the second time.

J. M. Daly, a witness for plaintiff, testified on cross-examination as follows:

"Q. I understand you to say that a proper way to make a coupling of cars having drawheads of different heights is to put the link in the higher drawhead and to prop up the lower drawhead with anything the switchman may be able to pick up around the yard, as a chip, cinder, stone or anything?"

"A. Yes, sir, we very often use a link or a pin."

. . . . . . .

"Q. Is it not common among experienced switch men and considered reasonably safe by them, where they come to couple cars having drawheads of unequal height to simply prop up the drawhead in the way you have before indicated, and then insert the common straight link in the higher drawhead and. allow the cars to come together in that way?"

"A. Yes, sir, it is common where the engine has hold of the cars and stops the cars and there is time."

"Q. Suppose that the engine has not hold of the cars, but that it has been kicked back for the purpose of being coupled to a car having a low drawhead, and this is discovered by the switchman, and he declines to try to effect the coupling when the cars first come together, but waits for the rebound, will not an experienced brakeman in such case go along and prop up

the lower drawhead and wait for the next movement of the car to make the coupling?"

"A.   Yes, if he has room to do it."

"Q.   And in such case such a coupling would be easily effected in that way, would it not, with a straight link?"

"A.   Yes, sir, if you can raise the drawhead high enough."

"Q.   Is it not true the coupling of cars having drawheads of unequal heights are generally made by switchmen with straight links by simply propping up the lower drawheads in the way you have indicated?"

"A.   Yes, sir."

The plaintiff's petition is based upon defendant's negligence in failing to furnish him a crooked link with which to make this coupling and thereby forcing him to use a straight one in so doing.   Judgment is asked for $5,000 damages.

The answer, in addition to a denial of the allegations of the petition, contains a plea of contributory negligence, which was put in issue by the replication.

Plaintiff introduced testimony tending to show the facts hereinbefore set out, and at the conclusion of his evidence, the court sustained a demurrer.   From a judgment in favor of the defendant plaintiff has appealed to this court.

The question presented for our determination is, whether the evidence introduced by plaintiff himself made out such a case as entitled him to go to the jury.

If it be conceded, that the defendant was guilty of negligence, in failing to provide crooked links to be used by switchmen in coupling cars, where the drawheads were not of the same height, the issue of plaintiff's contributory negligence then becomes material.

If it clearly appeared from the testimony of the witnesses introduced by plaintiff in his own behalf,

that he was guilty of negligence directly contributing to his injury, he had no case for the jury and the court properly directed a verdict for defendant. BLACK, J., said in *Weber v. Kansas City Cable Railway Co.*, 100 Mo. *loc. cit.* 201. "Ordinarily, as has been said by this court on several occasions, contributory negligence is a question of fact for the jury; but the power and duty of the court to direct a verdict in proper cases can not be questioned. As has been said, if it appears, without any conflict of evidence from the plaintiff's own case, or from the cross-examination of his witnesses, that he was guilty of negligence proximately contributing to produce the injury, it would be the duty of the court to take the case from the jury." *Buesching v. Gas Light Company*, 73 Mo. 219; *Yancey v. Railroad*, 93 Mo. 433.

Plaintiff in this case was an experienced switchman. He was thirty-two years old and had been railroading a dozen years or more. Coupling freight cars, whose drawheads were of different heights had been of almost daily occurrence in defendant's yards, so his witness says. Defendant had never at any time furnished crooked links for that purpose, and, of this plaintiff was well aware. The evidence clearly shows that it was the practice of defendant's switchmen, when a coupling of this kind was to be made, to use a straight link, which was placed in the higher drawhead, and the lower was propped up and the connection thus made. It was further shown that this had not only been the uniform practice but that it was proper, and reasonably safe to do it in that way. The only excuse offered by plaintiff for taking another course is, that there was not time to prop the lower drawhead after the rebound of the car and before it was "kicked" a second time against the other cars. He says that it would have been more dangerous for him to have gone between the cars for the purpose of

propping the drawhead, in the short space of time intervening, than to do as he did. But he need not have done either. There was no emergency requiring him to risk his life or limbs in making the coupling at *that* time. He was not commanded to do so. It does not appear that any harm would have resulted from a failure to make the coupling the second time the cars came together. It would have caused a little more trouble to the plaintiff and possibly other employees, but that is all.

He could have waited until the second rebound, then arranged the drawhead in the usual manner and made the coupling at the *next* movement of the car, and his witness says in substance that this is what an experienced brakeman would ordinarily have done. Plaintiff was fully aware of all the circumstances and of the dangers to be encountered. Instead of acting in a way that would have insured perfect safety, he pursued a plan that was likely to and did result in the injury which he sustained.

The case in some of its features is similar to *Hulett v. Railroad*, 67 Mo. *loc. cit.* 241. NAPTON, J., said: "Now, the testimony of the plaintiff himself was that he was perfectly aware of the fact that the two cars were of different heights; that the difference was obvious to the eye of any one, and that being aware of this difference, he pushed up the drawhead of the flat car and turned down the link on the baggage car, but the inequality in height of the two cars proved to be greater than he supposed. He admits that he could have ascertained the exact difference by stopping the engine, or by closer examination before he ordered the engine to move, and obviously, as other witnesses stated, *he could have avoided all risk by making the coupling from the platform of the baggage car.* He thoughtlessly ventured to *stand on the ground* and

attempt the connection with a straight link which he ordinarily did not use in coupling cars of unequal height." The court held that the demurrer to the evidence in the case should have been sustained. In Bailey on Personal Injuries Relating to Master and Servant, Vol. 1, sec. 1121, it is said: "It is a familiar principle, which common sense as well as the rules of law ought to teach any one, that where an employee of a railroad knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence."

Again in section 1123: "Where a person having a choice of two ways, one of which is perfectly safe and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and can not recover."

The testimony plainly shows in this case that plaintiff need not have taken the risks, which he did. If he had followed the usual practice of switchmen, with which he was perfectly conversant, he could have made the coupling without injury to himself. It is no answer to say, that he could not prop the drawhead before the car came back the second time. He was not compelled to do so at that time.

It was not essential that the coupling should be made at that moment. He could easily have awaited another movement of the car, and as his safety depended upon it, should certainly have done so. He should have made the coupling in the usual way, and no necessity existed for doing it in a different and more dangerous manner. He voluntarily placed himself in a dangerous position without any necessity for so doing.

We agree with the trial court that plaintiff failed to make out a case and its judgment must be affirmed.

All concur.