HENRIETTA SCHILLER, Respondent, v. KANSAS CITY BREWERIES COMPANY, Appellant.

Kansas City Court of Appeals, May 15, 1911.

1. **EVIDENCE: Negligence: Custom, Proof of: Apparatus in General Use.** Under the rule that, custom will not afford a standard for the determination of·an issue of negligence, although it has probative value, evidence was admissible of a custom in Kansas City to provide skids used in loading and unloading cars with cleats, hooks, or some other device, to hold them in place, as such evidence had a tendency to show that in using an appliance less safe than that approved by general usage, defendant was not reasonably careful.

2.  **MASTER AND SERVANT: Assumption of Risk: Contributory Negligence.** The servant never assumes a risk of injury created by the negligence ·of the master, and the fact that the servant is familiar with the defect caused or suffered to exist, by such negligence does not alter or affect the application of the rule, and where it appears that the negligence of the master was the proximate cause of the injury, the only defense available to the master is contributory negligence.

3.  ———: **Contributory Negligence: Unloading Cars: Gang Plank.** In an action for damages for death of plaintiff's husband, from injuries received by being struck by a loaded truck which fell to the ground together with a gang-plank that had been pushed over the sill of the car-door, plaintiff's evidence itself showed that deceased knew all about the defects in the gang-plank, and that the unloading dock and car-door sill were icy. The evidence also showed that his fellow workmen attempted to run the truck out of the car and on to the gang plank, when, owing to a displacement of the piece of sheet iron used to cover irregular apertures in the end of the gang plank, one of the rear wheels, having the diameter of a foot, caught in one of the defective places in the end of the skid. Deceased was in front standing on the gang plank, and pulling and lifting on the handle bar. The others pulled and pushed from behind. *Held*, that as a matter of law deceased was guilty of contributory negligence.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback, Judge.*

REVERSED.

*J. C. Rosenberger, Kersey Coates Reed* and *Cowherd & Ingraham* for appellant.

(1)   The court erred in overruling the demurrer to the evidence and in refusing to instruct the jury by mandatory instruction to find for the defendant because (1) the jury was caused by the negligence of the deceased and his co-servants; (2) because the deceased assumed the risk, and (3) because the defendant was not guilty of negligence. (1) The injuries were caused by the negligence of the deceased and his co-servants. (2) The danger was open and obvious, and deceased assumed the risk. Pollman v. Car & Foundry Co., 123 Mo. App.

219; Harris v. Railroad, 146 Mo. App. 524; Fugler v. Bothe, 117 Mo. 475; Steinhauser v. Spraul, 127 Mo. 541; Holloran v. Iron & Foundry Co., 133 Mo. 470; Mathis v. K. C. Stk. Yds. Co., 185 Mo. 434; Knorpp v. Wagner, 195 Mo. 637; Thornburg v. Old Judge Mining Co., 126 Mo. App. 660; Blundell v. Miller Mfg. Co., 189 Mo. 559; Bradley v. Forbes Tea & Coffee Co., 213 Mo. 320. (2) There was no negligence on the part of defendant. Moriarity v. S. & S. Co., 132 Mo. App. 653; Bowen v. Railroad, 95 Mo. 268; Forbes v. Dunnavant, 198 Mo. 193. (3) The court erred by giving instruction No. 1 at the instance and request of plaintiff. (4) The court erred in receiving, over defendant's objection, evidence that other employers using skids under wholly different conditions had provided a different style of skid. Glover v. Meinrath, 133 Mo. 292; Friel v. Railroad, 115 Mo. 503; Muirhead v. Railroad, 31 Mo. App. 578; same case 19 Mo. App. 634. (5) The damages assessed by the jury are excessive and are the result of passion and prejudice on the part of the jury. Knight v. Lead & Zinc Co., 75 Mo. App. 541; Marshall v. Mining Co., 119 Mo. App. 270; Parsons v. Railroad, 94 Mo. 286; Barth v. Elevated Ry. Co., 142 Mo. 535.

*R. L. Fisette* and *Bird & Pope* for respondent.

(1) When a servant continues in a master's employment, knowing that such master is negligent, and is later injured because of such negligence, there is no assumption of risk, but the question is whether the servant is guilty of contributory negligence in remaining in such employment. Jewell v. Bolt & Nut Co., 132 S. W. 703; George v. Railroad, 225 Mo. 364; Schultz v. Railroad, 129 S. W. (Mo. App.) 1051, 1053. (2) In all of these skid cases it will be found that the employers using skids invariably had some method or means of fastening the skid so as to keep it from slipping and sliding when the skid was on an angle or slope and not on a level, and generally some appliance was used for that purpose

even when the skid was on a level. Porter v. Railroad, 71 Mo. 66; Gutridge v. Railroad, 105 Mo. 526; Bender v. Railroad, 137 Mo. 440; Epperson v. Cable Co., 155 Mo. 385; Doyle v. Trust Co., 140 Mo. 19.

JOHNSON, J.—This suit is prosecuted by plaintiff to recover damages for the death of her husband which, she alleges, was caused by the negligence of defendant. In addition to a general denial the answer pleads assumed risk and contributory negligence as affirmative defenses. The appeal was taken by defendant from a judgment of $7500 recovered by plaintiff in the circuit court.

The death of Otto Schiller, the husband of plaintiff, occurred December 9, 1909, at the brewery of defendant in Kansas City where he was employed as a bottler and truckman and had been so employed three years or more. There was a loading dock at the brewery, a railroad track parallel to the dock and cases of empty beer bottles were being unloaded from a freight car standing on the track. The height of the floor of the car was four feet, that of the dock two and one-half feet and the distance between the car and the dock was eight or nine feet. A skid or gang plank provided by defendant was being used to bridge this space, and the method of unloading consisted of wheeling a four-wheel truck into the car, loading it with cases, and then wheeling it back down the gang plank to the dock. The platform of the truck was about one foot high and the wheels were set under the platform, the two rear wheels being somewhat larger than those in front. The gang plank consisted of four or five two-inch oak boards held together by 2x6 cross pieces, two in number, nailed to the under side of the boards near each end. The skid thus formed was ten feet long and between four and five feet wide. The end intended to go into cars was shouldered down to a width of about four feet to permit of its entrance into the narrow doors of refrigerator cars. The skid had

been in use some six years and the narrow end which originally had been beveled to a thickness of one inch had become worn irregularly so that the wheels of a truck being drawn out of the car were likely to catch in some of the irregular apertures.    To guard against this the workmen had been in the habit of taking a piece of sheet iron which had been furnished by defendant for use in the operation of a loading chute and placing it over the end of the skid in the car in order that the truck wheels might not come in contact with the end of the skid.    The sheet iron was 33x36 inches square, not large enough to cover the entire end of the skid, but larger than the tread of the truck.    The weather was bad and the platform of the dock and the sill of the car were somewhat icy.    There were no cleats or other appliances on gang-plank or dock to hold the former in place and there was nothing to prevent it from slipping out of the car except the weight of itself and its load.    A gang of workmen had the car about half unloaded when Schiller was called from other work to assist them.    Frequently he had helped unload cars at that place.    He was familiar with the place, the work, the construction and state of repair of the gang plank, and knew that no cleats, hooks, or other device had ever been provided for holding the plank in place.    After two or three truck loads had been taken out of the car the truck was wheeled in and loaded with twelve cases weighing 75 pounds each.    The men then attempted to run the truck out of the car on to the gang plank when, owing to a displacement of the piece of sheet iron, one of the rear wheels caught in one of the defective places in the end of the skid. The men tried to pull and push the vehicle over the obstruction.    Schiller was in front standing on the gang plank and pulling and lifting on the handlebar.    Other men pushed from behind.    In response to this effort the gang plank which extended only six inches over the door sill slid forward and fell to the ground, carrying with it Schiller and the

loaded truck. He was struck by the truck and cases and so badly injured that he died in a short time.

The duties of the truckmen did not include that of constructing or repairing any of the tools or appliances used by them. Evidence was introduced by plaintiff, over the objection of defendant, tending to show that it is customary in Kansas City to provide skids used in loading and unloading cars with cleats, hooks or some other device to hold them in place. The method and ·means of doing the work employed in the instances un- der consideration were those used by defendant during the whole period of Schiller's employment.

The allegations of negligence in the petition are as follows:

"That on said date defendant carelessly and negli- gently furnished for the use of said Otto Schiller and his fellow-workmen, who were assisting him in his work, a skid or runway which was used to bridge the space be- tween said loading dock and said freight car in which they were working at said time, which car had been set and was standing on said railroad or switch track near to or adjoining said loading dock. That said skid was about ten feet long and consisted of planks or boards, about two inches thick, and said skid was of about the width of said car door, or four or five feet wide. That at said time said skid or runway was at said time in a de- fective an unsafe condition, in that it was torn at both ends and broken and had worn out grooves or places in said ends, and the wood thereof was rotten and decayed, and there were no cleats at or near the ends thereof to keep it from slipping when a person walked thereon, or a truck was run thereon, and had no appliance at the end that was in said car door or doorway to hold it and keep it attached to said car door or doorway, and said load- ing dock was at said time also in a defective and unsafe condition in that no cleats were nailed on said platform or other apparatus attached to said platform of said load- ing dock to keep or prevent said skid or runboard from

slipping out of place when in use in unloading cars, and said defective and unsafe condition of said skid or runway and of said platform of said loading dock had existed for several months previous to said date and was well known to said defendant, or should have been known to said defendant, long prior to said date, by the exercise of ordinary care and caution. That on said December 9, 1909, defendant failed and neglected to furnish the said husband of plaintiff with a reasonably safe place in which to work, or reasonably safe skid or runway or loading dock with which to do said work, and failed and neglected to maintain the same in a reasonably safe condition, and such conditions had existed as aforesaid for a number of months previous to said date, yet defendant failed and neglected to repair or remedy said skid or runway, or said loading dock, or the platform thereof, and put and keep the same in a reasonably safe condition for the said husband of plaintiff and his fellow-workmen to do their work with reasonable safety to themselves."

Defendant argues that its demurrer to the evidence should have been sustained on three grounds, viz., that no negligence of the master is shown, that the risk which caused the injury was one of the natural risks of the employment and that the proximate cause of the injury was the negligent manner in which the servants, including Schiller, used reasonably safe appliances. Before discussing the questions presented by the demurrer we shall dispose of the point urged against the admission of evidence tending to prove the general custom in Kansas City relative to providing skids, of the kind in controversy, with appliances for holding them in position while in use. The rules which allow a master to conduct his business in his own way, as long as his way is reasonably careful, and which absolve him from any duty of providing his servant with the latest and most approved appliances have, as corollary, the further rule which, in the judicial investigation of the issue of whether or not

the master, in a given case, performed his duty of exercising reasonable care to furnish his servant reasonably safe appliances with which to work, forbid evidentiary comparisons between the appliances under consideration and those used by some other master or masters engaged in the same business.

The rule thus is stated in I Labatt on Master and Servant, sec. 35: "From the above-stated conception of the extent of the master's obligations is drawn the very important practical deduction, constantly reiterated and applied, that he cannot be charged with a breach of the duties owed to his servants, simply on the ground that a safer method or a safer instrumentality than that from which the injury resulted was available and might have been adopted by him. In other words, the question whether the particular machinery provided by a master is proper and suitable is to be determined by its actual condition, and not by comparing it with other machinery. Or, as the doctrine may also be expressed in more general terms, evidence which merely tends to show that the particular accident which caused the injury might not have happened if a particular precaution had been taken goes for nothing, in considering the question of legal liability on a charge of negligence."

As further observed by the same author, the test is not whether the master omitted to do something he should have done but whether in selecting tools and machinery and in keeping them in repair, he was reasonably careful. And though it appears that general usage and custom, in effect, condemns a certain type of tool or appliance as obsolete and not reasonably safe, that fact alone will not, in law, suffice to denounce as negligent the master who uses such type. The final test of negligence is not usage or custom but the inflexible rule which fixes reasonable care as the standard by which the conduct of the master to the servant is measured. Men must be allowed to depart from custom else there would be no progress in the arts and sciences or in the broad

fields of commercial and industrial endeavor. But though custom will not afford a standard for the determination of an issue of negligence it has probative value. [Brunke v. Tel. Co., 115 Mo. App. 36, and cases cited; Calcaterra v. Iovaldi, 123 Mo. App. 347; Spencer v. Bruner, 126 Mo. App. 94; Gordon v. Railway, 222 Mo. l. c. 536.]

"Evidence of a custom in doing a certain thing has probative force bearing upon negligence since custom arises from its adoption by many prudent men and the law recognizes the value of arriving at the nature or tendency of the given act by considering its effect upon the conduct of others as shown by a general custom." [Gordon v. Railway, supra.]

Under this rule the evidence in question was admissible as it had a tendency to show that in using an appliance less safe than that approved by general usage defendant was not reasonably careful.

Passing to the demurrer to the evidence what we have just said answers in part the contention that the evidence does not accuse defendant of negligence. Considering the further facts that the truck men had no right to nail cleats or secure the stability of the gang plank, but were required to put it in place and proceed with their work of unloading, there is ground for a reasonable inference that the skid, as first provided, was not a reasonably safe instrumentality for such use and that the conditions of ill repair into which it was allowed to fall and remain rendered it still less safe. The icy condition of the dock and car door sill no doubt enhanced the danger but that condition, instead of favoring the position of defendant in this case, is against that position, since it clearly emphasizes the dereliction of defendant in requiring its men to work with a defective appliance under conditions that made such work unnecessarily dangerous.

Defendant was bound to anticipate that snow and ice would come and to make reasonable provision for

such contingencies.  The facts of this case may be easily differentiated in essential particulars from the cases relied on by defendant of which Mathies v. Stock Yards Co., 185 Mo. 434, is typical.  In substance, the vital holding in that case is that the appliance furnished by the master was reasonably safe for the purposes of its intended use but neither that case, nor any other in this state to which our attention has been called, even intimates that a master should be held blameless where the tool, instrumentality or place provided by him is not reasonably adapted to the purposes of its use.

The incline of the gang plank from the dock to the car made the slipping of the plank a probable result of the continued striking against its end of the wheels of heavily loaded trucks and, since the workmen had neither the means nor opportunity of fastening the gang plank we think the jury were entitled to the inference that defendant was negligent in requiring them to work with an appliance that was dangerous but would have been safe had defendant observed reasonable care in its construction and maintenance.

Finding that the charge of negligence on the part of defendant is sustained by evidence which tends also to show that such negligence was a proximate cause of the injury we shall dispose of the issue of assumption of risk in very few words.  The rule is firmly established in this state that the servant never assumes a risk of injury created by the negligence of the master.  [Jewell v. Bolt & Nut Co., 231 Mo. 176, 132 S. W. 703; George v. Railroad, 225 Mo. 364; Schultz v. Railway, 145 Mo. App. 262.]  And the fact that the servant is familiar not only with the defect caused or suffered to exist by such negligence does not alter or affect that application of the rule, and where it appears that negligence of the master was a proximate cause of the injury, the only defense available is contributory negligence.  If the danger created by the defect in the appliance is so glaring and imminent as to threaten immediate injury the servant

would be guilty of negligence in law in facing such danger, but if the danger be of a less truculent nature so that an ordinarily careful and prudent person in the situation of the servant would be justified in concluding that by exercising care commensurate to the danger he could escape injury, the law does not impute negligence to the servant who continues in the employment and observes the care in working with the defective appliance that would be expected of a reasonably careful person in such situation. It is a fundamental rule that the servant always must exercise ordinary care for his own protection and ordinary care demands that he make a reasonable use of his knowledge of the risks of his service whether such risks are natural and incidental to the work or are caused by the negligence of the master. Knowing the nature of a risk and possessing the means and opportunity of avoiding injury it is his duty to employ such means and opportunity, and a breach of such duty would constitute negligence.

The application of these rules to the facts in hand convinces us that the contributory negligence of plaintiff's husband is established indisputably by her own evidence and that the learned trial judge erred in not sustaining the demurrer to the evidence. Schiller knew all about the defects in the gangplank and must have known that one of the rear wheels of the truck was off of the sheet iron plate and against the end of the gang plank. The diameter of the wheel was about one foot, the height of the obstruction was some three inches and the truck necessarily was somewhat canted. Under such circumstances and with knowledge that the dock and door sill were icy the action of Schiller and his fellow workmen in attempting to make the wheel ride over the obstruction by pulling and pushing it against the end of the gangplank was as obviously dangerous as it was unnecessary. Dangerous, because it was almost certain to push the plank off the door sill, since the plank was unsecured and rested on smooth supports, and, unnecessary, be-

cause there was a safer method of doing the work available to the workmen. By pushing the truck back a few inches and readjusting the iron plate the vehicle could have been rolled on to the gangplank with ease and safety. It appears beyond question that Schiller and his fellow-workmen voluntarily chose the more dangerous of two courses, of the risks whereof they had full knowledge. The law condemns such conduct as negligence and since that negligence is presented by the evidence as a fact, of the existence of which there is no room for a difference of opinion among reasonable minds, we must hold that plaintiff has no cause of action.

The judgment is reversed. All concur.