## MARY I. AEBY v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.

Division Two, April 5, 1926.

1. **NEGLIGENCE: Unsafe Platform: Defective Construction: Pleading: Knowledge.** An allegation of the defendant's knowledge of a dangerous depression in its railroad platform arising from defective construction, is not necessary. If the unsafe condition is due to the manner in which the platform was constructed, and the petition sufficiently sets forth the unsafe condition in which it was maintained, it will be assumed that defendant had knowledge of its defective condition prior to the time its employee was injured, and it becomes unnecessary to allege that defendant knew, or by the exercise of ordinary care could have known, of the negligent conditions, or that they had existed for such a length of time to have enabled defendant, by the exercise of ordinary care, to have discovered and remedied them.

2. ———: ———: **Ordinary Care: How Determined: Ice and Snow: Anticipation.** Reasonable and ordinary care must be determined in the light of the dangers to be reasonably anticipated. Where the railroad company constructed a ten-foot platform in front of its passenger station, of loose chat and broken stones laid on the ground, and made it a foot higher next to the tracks than at the station house, and permitted rain water to run off the roof upon the platform and the water to wear channels in the chat along the house and at the steps at the door into the waiting room, it must be presumed to know that a depression would form in front of the steps, caused by the rain and the travel of persons to and from the waiting room; that the rain would fill the depression with water; that the water would freeze in the winter, and that the depression would be covered with ice and snow and become dangerous to persons entering or leaving the waiting room. And all these facts being alleged in the petition, and the depression arising out of a defective construction, it was unnecessary to allege that defendant had or could have had knowledge of the negligent conditions. In the exercise of ordinary care the defendant was bound to anticipate, not only that the depression would form, but that its station agent, walking over it upon a cold and snowy night, might slip, fall and be injured, and to make reasonable provisions for such contingencies.

Aeby v. Mo. Pac. Railroad Co.

3. ————: Federal Act: Pleading Defective Appliance: Railroad Plat-
form: Works: Casus Omissus. A railroad platform in front of a
passenger station, used by defendant's station agent in the per-
formance of her duty to meet all trains and to operate a truck in
handling mail, baggage and express, if defectively constructed and
containing a dangerous depression, is embraced within the pro-
visions of the Federal Employers' Liability Act, declaring that
"every common carrier by railroad" while engaging in interstate
commerce "shall be liable in damages to any person suffering in-
jury while employed by such carrier in such commerce . . . by
reason of any defect or insufficiency, due to its negligence, in its
cars, engines, appliances, machinery, track, roadbed, works, boats,
wharves or other equipment." For the performance of such duties
by such station agent the platform is "works" or a working place,
and a petition alleging that she was injured when she stepped upon
a depression in the platform in front of the steps, covered with
ice and snow, in returning from placing a truck for the reception
of mail from an interstate passenger train, states an injury due to
a defective or insufficient appliance designated in the act.

4. ————: Assumed Risks: Unsafe Place: Ice and Snow: Ordinary Care:
Instruction. The servant never assumes a risk created by the neg-
ligence of the master. Where the evidence tends to show that the
defendant railroad company was negligent in the construction and
maintenance of a platform in front of its passenger station; that it
was not the duty of the station agent to repair a depression therein
caused by rain and travel; that she did not know that there was
ice under the snow thereon when she stepped upon it in the per-
formance of her duties, and slipped, fell and was injured; and that
the defendant's negligence, in the construction and maintenance of
the platform and in permitting such unsafe depression to form,
was the proximate cause of her injury, she did not assume the risk
of injury resulting from the prevailing conditions. If she did
not know that ice had formed on the water in the depression under
the snow that had fallen during the night, and its existence was not
plainly observable, she was not required to use even ordinary care
to discover it, and an instruction which required her to use ordinary
care to discover the ice under the snow and to avoid stepping on it
was more favorable to defendant than the law allows.

5. ————: Evidence: Climatic Conditions: Anticipation. Evidence
that there were depressions and holes in the railroad platform con-
structed of chat and loose stones; that rain came on the night of
January 13th, and water filled the holes and froze, and snow covered
the ice; that this was not unusual; that ice had previously formed
in the depressions, and that the place was the northern part of

Arkansas, is evidence from which the jury may properly infer that a reasonably prudent railroad operator could reasonably have anticipated that rain, sleet and ice would fall and accumulate in the holes.

6. ———: ———: Total Failure: Foreclosed by Instruction: Waiver. Defendant's contention on appeal that plaintiff knew or should have known rain had filled the holes in the platform and had frozen and that she failed to exercise ordinary care for her safety, and that her injury was therefore solely due to her own negligence, is foreclosed by its instruction, asked and given, declaring that if plaintiff failed to exercise ordinary care to see and avoid ice on the platform and that such failure directly caused her to slip and fall, such failure is not a bar to a recovery, but the damages, if any, which shall be awarded to her, shall be diminished in proportion to the amount of her failure to exercise ordinary care attributable to her, and by a verdict for plaintiff.

7. **EXCESSIVE VERDICT**: $15,000: Uterine Hemorrhage, Etc. At the time of the trial plaintiff was thirty-six years of age and unmarried. Prior to her injuries she was in good health, was earning from $150 to $165 per month, and between her injuries and the trial she had lost $5,000 in wages. She was a station agent, and in returning from a train stepped upon snow and ice which had gathered in a hole in the chat platform, slipped, fell and was injured, and the trial occurred two years and ten months thereafter. After the accident, she was for fifteen months in defendant's hospitals, at defendant's expense, and under the care of defendant's physicians altogether for eighteen months. While in the hospitals, she was confined to her bed and suffered pain almost constantly, from uterine hemorrhage, spells of weakness and fainting, nervousness, insomnia, and a backward displacement of the uterus. Five months after the injury the appendix and right ovary were removed, and the ligaments shortened and curetted. During the last year before the trial she worked four and a half months at reduced wages, and during the time uterine hemorrhages persisted, and her nervous condition and physical weakness made it almost impossible for her to work at all. The jury, in her action based on the Federal Employers' Liability Act, assessed her damages at $21,500; at the suggestion of the court she remitted $6,500 from the verdict, and judgment was rendered for $15,000. *Held*, that in this class of cases the amount of the award rests largely within the discretion of the jury, and there is nothing in the circumstances that requires this court to interfere in behalf of defendant with the final award.

**Appeal and Error**, 4 C. J., Section 2609, p. 701, n. 49. **Damages**, 17 C. J., Section 459, p. 1118, n. 22. **Master and Servant**, 39 C. J., Section 415, p. 290, n. 44; Section 468, p. 349, n. 48; Section 550, p. 434, n. 98; Section 897, p. 696, n. 33; Section 1411, p. 1228, n. 51.

Appeal from St. Louis City Circuit Court.—*Hon. Charles B. Davis*, Judge.

AFFIRMED.

*James F. Green* and *M. U. Hayden* for appellant.

(1)   The judgment in this case should be reversed, without remanding the cause for another trial, for the following reasons:   (a)   The petition does not state facts sufficient to constitute a cause of action against appellant.   Nowhere in said petition is there any averment that appellant either knew, or, by the exercise of ordinary care could have known, of any of the alleged negligent conditions or that they, or any of them, had existed for a sufficient length of time to enable appellant, by the exercise of ordinary care, after knowing of said conditions, either actually or constructively, to have removed or repaired them and thus have prevented respondent's injury. Davidson v. Railway Co., 229 S. W. 786; Zitzmann v. Glueck Box Co., 276 S. W. 23.   (b)   The allegations of respondent's petition do not bring the case within the provisions of the Federal Employers' Liability Act, as there is no averment that she was injured through the negligence of any officer, agent or employee of appellant, or that her injury was due to any defect or insufficiency in any of the appliances or equipment specified in said act.   Act of Congress, 35 Stat. ch. 49, 65 U. S. Comp. Stat. 1913, secs. 8657-65; Elliott v. Payne, 293 Mo. 581; Kern v. Welz, 136 N. Y. Supp. 412, 151 App. Div. 432; Ripp v. Fuchs, 113 N. Y. Supp. 361, 129 App. Div. 321; Davis v. Plant, 138 N. Y. Supp. 145; Cahill v. Railroad, 190 Mass. 421.   (c) The uncontradicted evidence of respondent herself wholly fails to establish facts for which a recovery can be sustained under the provisions of said Act of Congress.   On the contrary, said evidence establishes, without controversy, that her injury was not occasioned by any of the causes enumerated in said act.   Authorities last above.

(d) The proof wholly fails to establish that the condition which caused respondent to slip and fall existed as the result of any negligence on the part of appellant. Respondent herself testified that she slipped on the ice and fell. This was at about six o'clock in the morning. As late as nine o'clock in the evening before, the platform was dry and there was no snow or ice on it. The ice froze during the night. Respondent was the only employee of appellant at this station during the period which elapsed between the formation of the ice and the accident. The evidence fails to establish that during said period appellant either knew, or by the exercise of ordinary care could have known, of the existence of the ice, or could, by the exercise of ordinary care, have removed it, thereby having prevented respondent's injury. Am. Brew. Assn. v. Talbot, 141 Mo. 684; Zasemowich v. Am. Mfg. Co., 213 S. W. 803; Lowe v. Railroad, 265 Mo. 587; Warner v. Ry. Co., 178 Mo. 125; Vonkey v. St. Louis, 219 Mo. 37; Albritton v. Kansas City, 192 Mo. 574; Abbott v. Springfield, 210 S. W. 443; Armstrong v. Monett, 228 S. W. 771; Benton v. St. Louis, 248 Mo. 109; Ward v. Dry Goods Co., 248 Mo. 348; Strode v. Box Co., 250 Mo. 695; Looney v. Railroad, 200 U. S. 480; Patton v. Railway Co., 179 U. S. 658. (e) It further appears from respondent's testimony that such condition was a changing and changeable one, and varied with the amount of rainfall, and it fails to establish that such condition was the proximate cause of respondent's injury. Warner v. Ry. Co., 178 Mo. 125; Trigg v. Lumber Co., 187 Mo. 227; Strother v. Railroad Co., 188 S. W. 1102; Cadwell v. Stove Co., 238 S. W. 415; Patton v. Railroad, 179 U. S. 658. (f) Respondent assumed the risk of injury resulting from the conditions prevailing at the time and place of this accident, whether those conditions were ordinarily incident to the duties which she was employed to perform or whether they existed as the result of appellant's negligence. 3 Labatt's Master & Servant (2 Ed.) secs. 1182, 1186a; Pryor v. Williams, 254 U. S. 43; McIntyre v. Ry. Co., 286 Mo. 234; Lopez v. Hines,

254 S. W. 37; Railway Co. v. Horton, 233 U. S. 492; Jacobs v. Ry. Co., 241 U. S. 229.  (g)  Respondent's injury was due solely to her own negligence, both before and at the time of the accident.  Forbes v. Dunnavant, 198 Mo. 193; Mathes v. Stock Yards Co., 185 Mo. 434; Trainer v. Mining Co., 243 Mo. 359; Railway Co. v. Wiles, 244 U. S. 444; Davis v. Kennedy, 266 U. S. 147.  (2) The verdict is excessive.  It was so excessive as originally returned that justice to appellant could be rendered only by setting it aside and granting appellant a new trial.  The injustice done appellant was not removed by the order of the trial court ordering a *remittitur*, and a proper consideration of the rights of appellant warrants an order by this court granting a new trial.  Greenwell v. Ry. Co., 224 S. W. 404; Markey v. Railroad, 185 Mo. 348; Hurst v. Railroad, 219 S. W. 566; Varley v. Taxicab Co., 240 S. W. 228; Fitzsimmons v. Railroad, 242 S. W. 915; Adams v. Railroad, 229 S. W. 790; Burtch v. Ry. Co., 236 S. W. 338; Partello v. Ry. Co., 217 Mo. 645; Lessenden v. Ry. Co., 238 Mo. 247; Gaty v. Rys. Co., 251 S. W. 61; Richardson v. Ry. Co., 288 Mo. 258; Coon v. Ry. Co., 228 S. W. 78; Miller v. Schaff, 228 S. W. 488; Parker v. Ry. Co., 235 S. W. 1067.

*Abbott, Fauntleroy, Cullen & Edwards* for respondent.

(1)   A station platform is the working place of a station agent, who is required to operate a truck across the platform to deliver and receive express, mail and messages from trains, and falls within the term "works" in the Federal Employers' Liability Act.  Elliott v. Payne, 293 Mo. 581; Dietzman v. Screw Co., 300 Mo. 196.   (2) Where the defect in an appliance furnished by a master to a servant is a defect of construction, it is unnecessary to allege that the master had knowledge of the defect.  26 Cyc. 1144; 6 Thompson on Negligence (2 Ed.) p. 553; Dietzman v. Screw Co., 300 Mo. 196; Keitel v. Cable Ry. Co., 28 Mo. App. 657.   (3)   Due care on the part of a

master requires him to take into consideration the operation of natural forces upon instrumentalities furnished to the servant. 3 Labatt on Master and Servant (2 Ed.) p. 2750; Benton v. St. Louis, 248 Mo. 98; Johnson v. Railroad, 164 Mo. App. 600; Schiller v. Breweries Co., 156 Mo. App. 569; Bowen v. Railway Co., 95 Mo. 268; Carney v. Ry. Co., 39 N. D. 425; Union Pacific Ry. Co. v. O'Brien, 49 Fed. 538, 161 U. S. 451. (4) A master is liable to a servant who is injured by tripping on rough, uneven ice which has formed in a depression which the master has caused or permitted to form in a platform which constitutes the working place of the servant; and it is immaterial that the master had no actual knowledge of or opportunity to remove the particular ice in question. Beane v. St. Joseph, 256 S. W. 1093; Merritt v. Tel. Co., 215 Mo. 299; Smith v. St. Joseph, 42 Mo. App. 392; Heeter v. Huntsville, 121 Mo. App. 495; Elliott v. Payne, 293 Mo. 581; Melody v. Des Moines Ry. Co., 161 Iowa, 695; Sankey v. Chicago Ry. Co., 118 Iowa, 39; Gibson v. Iowa Cent. Ry. Co., 115 Minn. 147; Harding v. Transfer Co., 80 Minn. 504; Burdick v. Chicago Ry. Co., 123 Minn. 105; Renn v. Seaboard Air Line, 170 N. C. 128; Rogers v. Davis, 228 Pac. 330; Rifley v. Minneapolis Ry. Co., 72 Minn. 469; Gregg v. Chicago Ry. Co., 91 Mich. 624; Lawson v. Truesdale, 60 Minn. 410, 58 L. R. A. 323; Hill v. Fond du Lac, 56 Wis. 242; Dracass v. Chicago, 193 Ill. App. 75; Waters v. Kansas City, 94 Mo. App. 413; Conklin v. Elmira, 42 N. Y. Supp. 518, 11 App. Div. 402. (5) Respondent did not assume the risk resulting from the conditions prevailing at the time and place of the accident. Cincinnati Railroad Co. v. Thompson, 236 Fed. 1; Burdick v. Ry. Co., 123 Minn. 105; Rogers v. Davis, 228 Pac. 332; Bowen v. Mfg. Co., 105 Me. 31; Fitzgerald v. Paper Co., 155 Mass. 155. (6) The verdict is not excessive. Barr v. City of Kansas, 121 Mo. 32; Evans v. General Explosives Co., 239 S. W. 487; Mayme v. Ry. Co., 229 S. W. 386; Caldwell v. Payne, 246 S. W. 312; Payne v. Davis, 252 S. W. 57; Mount v. Western Coal Co., 242

S. W. 943; Myers v. Railroad, 246 S. W. ·257; Dahlstrom
v. Railroad Co., 167 Pac. 1080, 98 Wash. 390.

HIGBEE, C.—The plaintiff sued the defendant under
the Federal Employers' Liability Act for damages for
personal injuries sustained by her while employed as
station agent at Magness, Arkansas. The jury returned
a verdict assessing the plaintiff's damages at $21,500.
Plaintiff, at the suggestion of the court, remitted $6,500,
and judgment was rendered for plaintiff for $15,000 and
the defendant appealed.

The evidence for the plaintiff is that she entered the
employ of the defendant as a ticket agent at its station
at Morefield, Arkansas, a station between Batesville and
Magness, on March 20, 1919, and worked there in that
capacity until July 2, 1919, when she began work for the
defendant as station agent at Magness, a village having a
population of about 400, during the absence of the regu-
lar agent, Mr. Eden, and served there in that capacity
until a few days after she sustained her injuries on Jan-
uary 13, 1921, when Mr. Eden reported for duty. There
were four passenger trains passing Magness daily, which
were engaged in interstate commerce.

The station, a one-story building, 16 by 48 feet, faces
to the north. The platform, ten feet wide and 300 feet
long, between the station and the railroad track, was
constructed of loose chat or small broken stones, laid on
the surface of the ground. It is a foot higher at its north
side than at the station. There were no gutters on the
eaves of the roof of the station building, so that rain ran
off the roof to the platform which drained to the west,
wearing a channel in the chat along the north side of the
building, and in front of the steps at the door into the
waiting room, which door is at the west end of the sta-
tion. When plaintiff was employed as station agent at
Magness there was a depression about four feet square
and three or four inches deep at the steps in front of this
door, caused by the tramping of persons going in and

out of the station and by the water running in front of the door. This depression was probably a little larger and deeper on January 13th than in the previous July. There were a few other depressions or holes in the platform. Rain would collect and form puddles of water in these holes or depressions, which would gradually run away or be absorbed. During plaintiff's employment at Magness, there had been no hard freezing weather and she had not observed ice in these depressions.

It was plaintiff's duty as station agent to do book work, sell tickets to passengers and handle the express, baggage and freight work. The petition and answer aver that the plaintiff and the defendant were each engaged in interstate commerce and it is averred in the answer that the particular train mentioned in plaintiff's petition, to which she was "required to deliver and from which she was required to receive express, mail and messages," was a train which was operated by defendant and carried passengers and merchandise between the city of Newport, Arkansas, and the city of Joplin, Missouri. The suggestion of, or the making of, repairs in or about the station or the platform did not fall within the line of plaintiff's duties; such matters pertained to the duties of the section foreman or his superiors.

When plaintiff and her friend, Miss Fugett, retired on the evening of January 12, 1921 (plaintiff then lived in the station), the station platform was dry. There was a northbound passenger train scheduled to pass the station at 6:18 A. M. When plaintiff and Miss Fugett, at about 6:10 A. M., started out of the station to place the truck to receive the mail, baggage and express, it was dark and there were no lights on the platform; it had rained in the night and two or three inches of snow had fallen. The rain had filled these depressions and frozen. The ice in the hole in front of the door referred to was rough and uneven, but plaintiff did not know, nor did it occur to her, that there was or might be ice in these holes under the snow. She stepped off the west end of the

steps at the door, got the truck, which was covered with ice, at the west end of the platform, placed it conveniently for the reception of mail, baggage and express from the train, and then started to return to the station. She tripped, slipped and fell heavily on the rough and uneven ice under the snow at the door steps, and sustained serious internal injuries. There was evidence that puddles of water in this platform had frozen before plaintiff was employed as station agent at Magness. Particulars as to the nature and extent of plaintiff's injuries will be given in the opinion. At the close of the case the court overruled a demurrer to the evidence.

I.  It is insisted that the petition does not state facts sufficient to constitute a cause of action, because it fails to allege that the defendant either knew or by the exercise of ordinary care could have known of the alleged negligent conditions, or that they had existed for a sufficient length of time to enable defendant, by the exercise of ordinary care, to have discovered and remedied them.

Pleading: Knowledge.

The petition alleges that at the time of plaintiff's injury, and for a long time prior thereto, the surface of the platform was composed of chat and fine gravel so loosely put together that depressions, holes or drains were formed in it; that the platform and station were so negligently constructed that the platform sloped towards the door of the station and the station had no gutters on the eaves of its roof; that a depression formed in front of the door to the station; that the chat or gravel was carried away from in front of said door by persons passing in and out of the station, and the water falling on the station and on the platform flowed towards this depression, forming a ditch, and that in cold weather, when rain, snow and sleet fell, ice formed in this ditch and depression, and formed a slick, ice-covered and irregular surface, rendering it unsafe and dangerous for a person to step into or upon; that when plaintiff slipped and fell, the depot platform was

dark and unlighted, and that she had no knowledge that said platform was in said dangerous and unsafe condition, nor could she have knowledge of such fact by the exercise of ordinary care, etc.

"Where it appears from the complaint that the defect is a defect of construction, the authorities do not require an allegation of the employer's knowledge of the defect." [6 Thompson's Comm. on Law of Negligence (2 Ed.) 533.]

"Where the defect in an appliance is shown to be structural and is of such a character as renders it unsafe it may be inferred that the employer was aware of the defect and an employee who has been injured by such an appliance need not show that the master knew that it was defective." [26 Cyc. 1144, and cases cited in note 86.]

In Dietzman v. St. Louis Screw Company, 300 Mo. 196, 210, 254 S. W. 59, GRAVES, J., said: "Nor is there question as to the fact that defendant knew of the situation in ample time to have remedied it before the accident. In fact it constructed the place, and when it made it a working place, was bound to know its condition."

Elliott v. Payne, 293 Mo. 581, 239 S. W. 851, was an action based on the Federal Employers' Liability Act for the death of a locomotive fireman charged to have been caused by a defective platform. GRAVES, J., said: "Plaintiff had evidence tending to show that at places the bricks were lower than the curbing, and this condition permitted the accumulation of water and ice. Whether the defects were in the original construction, or appeared later by reason of use and the sinking of the bricks into the base upon which they were placed, can make no material difference. The charge in the petition is that the defendant maintained the platform in a defective condition."

In Sankey v. Chicago, etc., Ry. Co., 118 Iowa, 39, 91 N. W. l. c. 821, the court said: "It is first urged that defendant cannot be held negligent because of the presence

or accumulation of ice and snow upon its tracks and yards. Within certain limitations, this is the correct doctrine. Climatic conditions—heat, cold, rain, snow, and ice—are beyond the control of the employer, and the mere fact of their existence or occurrence does not tend to negative the exercise of reasonable care. *But it does not follow that a case cannot arise where the presence or existence of some of these elements is so combined with want of reasonable care by a railroad company in the maintenance of its tracks and yards as to create a danger which is not naturally or necessarily incident to a brakeman's labor.* The work of coupling and uncoupling cars, making up trains, taking and discharging freight, opening and closing switches, is done almost exclusively within the yard limits of the stations along the line of road, and, within reasonable limits, the obligation of the master to furnish his servant a safe place in which to work applies to these yards as imperatively as to the repair shops or to the general offices of the company. [See also Gibson v. Railroad, 115 Minn. 147, 131 N. W. 1057; Keitel v. St. Louis Cable Co., 28 Mo. App. 657, and Combs v. City of Kirksville, 134 Mo. App. 645, 114 S. W. 1153.]

Reasonable and ordinary care must be determined in the light of the dangers to be reasonably anticipated. The defendant must be presumed to know that many persons would pass over this platform and that holes or depressions would form in the loose chat or broken pieces of stone of which it was formed, particularly in front of the door to the waiting room; that rain would fill such holes with pools of water; that in the winter season these pools of water would freeze and were likely to be covered with snow and become unsafe for persons walking on the platform. In the exercise of ordinary care the defendant was bound to anticipate and make reasonable provisions for such contingencies; "for what a man knows and should know are equivalent in law." [Benton v. St. Louis, 248 Mo. 98, 109, 154 S. W. 473; Schiller v. Kansas City Breweries Co., 156 Mo. App. 569, 577, 137 S. W. 607; Johnson

v. Railroad, 164 Mo. App. 600, 622, 147 S. W. 529; Bowen v. Ry. Co., 95 Mo. 268, 275, 8 S. W. 230; Beane v. City of St. Joseph, 256 S. W. 1093, 1095; Merritt v. Telephone Co., 215 Mo. 299, 310, 115 S. W. 19; Smith v. City of St. Joseph, 42 Mo. App. 392, 398; Heether v. Huntsville, 121 Mo. App. 495, 499, 97 S. W. 239; 3 Labatt, Master and Servant (2 Ed.) 2750.]

The contention is devoid of merit.

II. It is insisted that the allegations of the petition do not bring the case within the provisions of the Federal Employers' Liability Act, as there is no averment that plaintiff was injured through the negligence of any officer, agent or employee of the defendant, or that her injury was due to any defect or insufficiency in any of the appliances or equipment specified in the act.

<span style="float:left">Appliances Embraced in Statute.</span>

The Act (U. S. Comp. Stat. 1913, secs. 8657-65) reads in part:

"Every common carrier by railroad while engaging in commerce between any of the several states or territories, etc., shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

It is insisted that a station platform does not come within any of the appliances or equipment mentioned in the act. The act is remedial and should receive a liberal interpretation. From the general and comprehensive terms employed it would seem to have been the intention of the framers of the acts to extend its protection to an employee suffering an injury in the circumstances of the case in hand. A careful reading of the act does not incline us to the conclusion that the plaintiff's cause of

action is a *casus omissus.* While the station platform may not be embraced within the other words of the act, it would seem that the general term "works" is sufficiently comprehensive. This term is thus defined in Webster's New International Dictionary: "A place where industrial labor of any kind is carried on."

This question was considered in Elliott v. Payne, supra, and it was held that a depot platform is not the working place of a locomotive fireman. GRAVES, J., said (594): "Those employees whose duties require them to unload passengers, baggage or freight, might say that it was a working place, but to other employees it would be a mere way of ingress and egress. Deceased was not in an employment which required him to use the platform as a working place."

We have seen that the defendant's answer avers plaintiff's duties required her to deliver to, and receive baggage, mail, express and messages from this particular train.

In appellant's statement learned counsel say: "A part of her [plaintiff's] duties consisted of operating the truck maintained at the station in the handling of express, baggage and mail. It was respondent's duty to meet all trains."

It is clear, therefore, on principle and authority, that this platform was the plaintiff's working place while she was engaged in the performance of those duties and it was the duty of the defendant to exercise reasonable and ordinary care to keep and maintain it in a reasonably safe condition for the performance of plaintiff's duties thereon and that the petition stated facts sufficient to constitute a cause of action under the act in question.

III. We have briefly summarized the evidence adduced by the plaintiff and are of the opinion that it is **Demurrer.** sufficient to support the verdict, and that the court properly overruled the demurrer offered at the close of the case.

IV. It is appellant's contention that the plaintiff assumed the risks of injury resulting from the conditions prevailing at the time and place of the accident. The testimony is clear that plaintiff had nothing to do with the repair of the station platform. Such repairs were made by the section men under the supervision of the section foreman. Appellant's witness Eden, who was employed as station agent at Magness before and after plaintiff served there in that capacity, testified that it was the duty of the section foreman to observe the conditions of things at the station once a day. The evidence tends to show that the defendant was negligent in the construction and maintenance of the platform and that such negligence was the proximate cause of plaintiff's injuries. "The rule is firmly established in this State that the servant never assumes a risk of injury created by the negligence of the master. [Jewell v. Bolt and Nut Co., 231 Mo. 176, 132 S. W. 703; George v. Railroad, 225 Mo. 364; Schultz v. Railway, 145 Mo. App. 262; Schiller v. Breweries Co., 156 Mo. App. 569, 578, 137 S. W. 607.]

Plaintiff did not know or apprehend there was ice in the depression under the snow, nor did she appreciate the danger of stepping thereon, nor assume the risk of doing so.

In Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 34 S. C. Rep. 635, 640, the court said: "But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming, until he becomes aware of the defect or disrepair and of the risk arising from it, unless the defect and risk alike are so obvious that an ordinary prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this court." [Cases cited.]

*Assumption of Risk.*

In McIntyre v. Railway Co., 286 Mo. 234, 256, 227 S. W. 1047, we said: ''The Federal courts in cases arising under the Federal Employers' Liability Act hold that an employee in entering upon a contract of employment assumes all the risks and dangers ordinarily incident to his employment; and risks caused by the employer's negligence which are obvious and fully known to the employee and appreciated by him, or so plainly observable that he must be presumed to know them. [Citing cases.] But he is not obliged to use even ordinary care in discovering dangerous defects. Knowledge will not be imputed to him unless the defects are plainly observable. [Citing cases.]''

The court gave the following instructions for the plaintiff:

''The court instructs the jury that if you believe and find from the evidence that on and prior to January 13, 1921, the plaintiff was in the employ of the defendant as station agent at its station in Magness, Arkansas;

''And that the defendant maintained between its said station and its rails a platform, and that it was plaintiff's duty to pass over and along said platform and deliver to and receive from passing trains express, mail and other things carried by defendant, and to place a truck in position for receipt of same from defendant's trains;

''And if you believe that defendant's platform had been so hollowed out and worn away in front of the station door that a depression formed in front of said door in which water, falling on the roof of defendant's station and flowing over its platform, accumulated therein;

''And if you believe that on the night of the 13th of January, 1921, it rained, and that the rain, falling on the roof of defendant's station and on its platform, flowed into the depression in front of said depot door and formed a slick, ice-covered, irregular surface therein, and that same was at the times mentioned in the evidence covered with snow, and that said platform at that point was not level, but slanted towards the depression; and if you fur-

ther believe that sleet and snow fell upon said ice, if such you find, and thereby formed a slick and slippery surface in front of said station door which rendered said station platform not reasonably safe for a person to walk upon and pass over;

"And if you further believe that the climatic conditions in and around Magness, Arkansas, at that season of the year were such that the defendant, as a reasonably prudent railroad operator, could reasonably have anticipated that rain, sleet and ice would fall and accumulate in said depression, and after so accumulating, was likely to freeze and thereby form a slick and slippery and irregular surface, unsafe for persons to pass over;

"And if you further believe that the plaintiff fell and was injured while in the course of her employment and in the act of passing over defendant's platform into defendant's station because of and on account of the slick and slippery irregular slanting surface (if you so find the fact to be), in front of said station; and if you further find and believe from the evidence that no freeze had theretofore taken place while she was in Magness;

"And if you further believe that the defendant could, by the exercise of ordinary care, have erected and maintained said station platform so as to prevent it from becoming unsafe (if you find it was unsafe) in rainy and freezing weather, and that the defendant negligently failed to so erect and maintain its platform; and if you find that plaintiff did not assume the risk of injury as explained in other instructions, then you will find for the plaintiff."

The court also gave instructions numbered 2, 3, 4 and 5 for the defendant, as follows:

"2. You are instructed that the mere fact that plaintiff may have been injured while in the employ of the defendant is not alone sufficient to entitle her to recover in this case, but, on the contrary, in addition to proving that she was injured, the burden is upon plaintiff to establish by the greater weight of the evidence

that she was injured as the direct and proximate result of some one or more of the acts of negligence alleged in her petition.

"3.    The court instructs the jury that if you find and believe from the evidence that at the time when plaintiff claims to have been injured the defendant was engaged in commerce between different states of the United States, to-wit, between the State of Arkansas and the State of Missouri, and that at said time plaintiff was employed by defendant as a station agent at Magness, Arkansas, and that said station was located on defendant's line of railroad between the city of Newport in the State of Arkansas and the city of Joplin in the State of Missouri, and that the train mentioned in the evidence, to which plaintiff was required to deliver and from which she was required to receive express, mail and messages was a train which was operated and carried passengers and merchandise between said city of Newport, Arkansas, and said city of Joplin, Missouri, then you are instructed that both defendant and the plaintiff were at said time engaged in interstate commerce.

"4.    You are further instructed that if you find and believe from the evidence that at the time when plaintiff claims to have been injured she and defendant were engaged in interstate commerce, as defined in other instructions, and if you further find and believe from the evidence that there were certain depressions or uneven places in the platform of defendant's station at Magness, Arkansas, or certain slants or slopes in said platform in which water might accumulate and in which snow, sleet or ice could or did accumulate, and if you further find and believe from the evidence that such conditions had existed for some time prior to the date on which plaintiff claims to have been injured and that during such time plaintiff had been employed by defendant as station agent at said station, and if you further find and believe from the evidence that plaintiff either knew or by the exercise of ordinary care for her safety could have known of such

conditions, if any, and if you further find and believe from the evidence that on the occasion of her injury, if any, such conditions, if any, were all open and obvious to plaintiff while passing over said platform and that the danger of slipping on any ice in or upon said platform was known to and appreciated by the plaintiff or by the exercise of ordinary care on her part could have been known and appreciated by her, then you are instructed that the plaintiff assumed all risks of injury likely to result therefrom while passing over said platform and is not entitled to recover in this case.

"5. The court instructs the jury that it was the duty of the plaintiff while in the employ of defendant and especially while proceeding across the station platform to exercise ordinary care for her own safety, and while in this case, even though you should find and believe from the evidence that on the occasion of plaintiff's injury, if any, she failed to exercise ordinary care to see and avoid coming in contact with whatever depression, if any, and with whatever ice, if any, there were in or on said platform, and that such failure on her part, if any, directly caused her to slip and fall, if you so find, such failure can and does not bar her right to recover. Nevertheless, in the event that you find for plaintiff, the damages which you may award to her shall be diminished by you in proportion to the amount of such failure on her part to exercise ordinary care for her safety, if you find she did so fail, as set out herein, attributable to her."

These instructions were very favorable to the defendant, and in fact put an unnecessary burden on plaintiff. Instruction 4 required her to exercise ordinary care to discover the dangerous conditions mentioned in the instruction. This requirement is in conflict with the McIntyre and other cases cited supra. Under the instructions the jury found that plaintiff did not assume the risk and hazard of slipping and falling on the ice while in the discharge of her duties. Other instructions asked

by the defendant on assumption of risk were properly refused.

V.   Appellant complains that plaintiff's instruction authorized the jury to consider facts not proven, and as-
Climatic     sumed as true facts which were controverted,
Conditions.   and broadened the averments of the petition or the scope of the evidence.   Appellant says:
1.   There was no evidence that the platform had been so hollowed out and worn away in front of the station door that a depression formed there in which water accumulated.   2.   The jury was not required to find that the alleged negligent condition was known- to defendant or had existed long enough that appellant knew, or by the exercise of ordinary care would have known of its existence.   3.   There was no evidence that the climatic conditions were such that a reasonably prudent railroad operator could reasonably have anticipated that rain, sleet and ice would fall and accumulate and freeze, etc.

There was ample evidence that the depression had worn and formed in front of the door of the station and that it was there when plaintiff was employed as station agent at Magness.   The second proposition we have already considered.   There was ample evidence as to the climatic conditions at Magness.   The rain filled these holes or depressions; the water did freeze and snow fell and covered the ice.   There is no contention that this was unusual or phenomenal; in fact, there was proof that ice had theretofore formed in holes in this platform.   Several witnesses referred incidentally to rain, snow and ice at Magness in the winter seasons.   It is a matter of common knowledge that climatic conditions of this character may be anticipated in the month of January in the northern part of Arkansas.   [Christy v. Wabash Ry. Co., 195 Mo. App. 232, 241, 191 S. W. 241; 23 C. J. 140, sec. 1964.] There is no merit in these contentions.   This question was submitted by defendant's Instruction 4.

VI.   Appellant's learned counsel insist that plaintiff's injury was due solely to her own negligence, both before and at the time of the accident.   The theory is, plaintiff knew or should have known rain had filled the holes in the platform and had frozen and that she failed to exercise ordinary care for her safety. Appellant's fifth instruction is opposed to and forecloses this contention; it is there declared that if plaintiff failed to exercise ordinary care to see and avoid ice on the platform and that such failure directly caused her to slip and fall, such failure is not a bar to a recovery, but the damages, if any, which may be awarded to her, shall be diminished in proportion to the amount of such failure on her part to exercise ordinary care for her safety attributable to her.

*Evidence: Total Failure.*

Under the Federal act, on which this action is based, contributory negligence of the employee is not a bar to an action for damages.

In Great Northern Railway Company v. Wiles, Administrator, 240 U. S. 444, 36 Sup. Ct. Rep. 406, a rear brakeman of a parted freight train, disregarding his duty to protect the rear of the train by going back and giving signals which the rules required, remained in the caboose and was killed by a passenger train, which he knew was closely following, and ran into the caboose.   It was held that the brakeman's disobedience of the rule was the causal negligence, there being no claim that the passenger train was negligently run.   Davis v. Kennedy, 266 U. S. 147, and Freese v. Railway Co., are also cited, but they are not in point.

VII.   Appellant insists the verdict is excessive. Plaintiff was hurt on January 13, 1921; prior to that time she enjoyed good health; the suit was brought November 17, 1922; the trial was on November 14, 1923, two years and ten months after the date of the injury.   She was in the Missouri Pacific hospitals fifteen months at the defendant's expense, and under the care of

*Verdict.*

the defendant's physicians altogether for a period of eighteen months. While in the hospitals she was confined to her bed and suffering pain nearly all the time. She suffered from a uterine hemorrhage from the time of her fall until the trial; spells of weakness, fainting spells, nervousness and insomnia and a backward displacement of the uterus. On June 21, 1921, she had her appendix and right ovary removed and the ligaments shortened and curetted. There was evidence that her injuries resulted from her fall. She was earning from $150 to $165 per month prior to the time of her accident. Between December 7, 1922, and November 13, 1923, the date of the trial, plaintiff worked altogether for about four and a half months at reduced wages. During this time, she had uterine hemorrhages and ran a temperature nearly all the time. She testified that her nervous condition and physical weakness made it almost impossible for her to work. At the time of the trial she was single and unmarried and thirty-six years of age. She had then lost about $5,000 in wages.

Plaintiff's injuries are in some respects similar to those sustained by the plaintiff in Brickell v. Flemming, 281 S. W. 951, except that Mrs. Brickell suffered a disfiguring scar on her cheek. In that case a verdict for $18,000 was affirmed. In Barr v. Kansas City, 121 Mo. 22, 23, 25 S. W. 562, it was said that "injuries of the character disclosed, are far more serious than the loss of a limb, without internal injuries." A verdict for $10,000 was sustained. In Evans v. General Explosives Company, a verdict for $20,000 for the loss of an arm, torn off at the shoulder, was held not excessive. [See Mayme v. K. C. Railway Co., 229 S. W. 386.] In Caldwell v. Payne, 246 S. W. 312, it was held, In Banc, that $15,000 for the loss of an arm below the elbow by a railroad engineer, aged forty, was not excessive. In this class of cases "the amount of the award rests largely within the discretion of the jury." [17 C. J. 870.] We see nothing in the cir-

cumstances of this case to warrant us in requiring a *remittitur*.

The judgment is therefore affirmed. *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.