**ATCHISON, T. & S. F. RY. CO. v. FORD.**

No. 23126.    April 16, 1935.

Rainey, Flynn, Green & Anderson and Neal A. Sullivan, for plaintiff in error.

Moss, Breckinridge & Young and Howard Wilson, for defendant in error.

BAYLESS, J.    J. F. Ford, defendant in error herein but plaintiff below, instituted an action in the district court of Kay county, Okla., against the Atchison, Topeka & Santa Fe Railway Company, a corporation, plaintiff in error herein but defendant below.    Judgment was rendered in favor of the plaintiff, by the verdict of the jury, and the defendant appeals.

The plaintiff was employed by the defendant and received an injury while so employed.    The suit instituted was brought under the provisions of the Federal Employers' Liability Act (USCA 45, secs. 51-59).    The gist of his complaint was that defendant had not furnished him a reasonably safe place to work and was thereby negligent.    The gist of the defense was: (1) That plaintiff was familiar with the surroundings of his employment and the conditions thereof; (2) that he was guilty

of contributory negligence (this plea was for the purpose of diminishing damages as provided by said act, supra) ; and (3) assumption of risk.

The first assignment of error argued is to this effect: No primary negligence on the part of the defendant was shown.

It has been held that a station platform is covered by the word "works," as used in said act, supra, and that said act applies to an injury sustained by an employee of a railroad company while working on or about a platform around a station house, when the other elements to establish liability coincide. Aeby v. M. P. Railway Co., 313 Mo. 492, 285 S. W. 965, as affirmed in 275 U. S. 426, 72 L. Ed. 351; and New York Central Ry. Co. v. Porter, 249 U. S. 168, 63 L. Ed. 536.

The facts established by the plaintiff's evidence are these, in substance: Plaintiff had been employed by defendant as a laborer in and about Blackwell, Okla., off and on for several years. The latter part of December, 1929, and the first half of January, 1930, was an unusually severe cold period, and there were heavy snows and much ice. January 11, 1930, the section crew, of which plaintiff was a member, was set to the task of clearing the accumulations of snow and ice from about the platform and station house of the defendant at Blackwell. This crew worked on said date, which was Saturday, laid off Sunday and reported for work on the same task Monday, January 13, 1930, the day the injury was sustained.

On the east side of the station house was a long brick platform or walk practically level with the surrounding ground. South of the station house was a platform, constructed of wood, which was about four or five steps higher than the brick platform and ground, and an incline from the east platform to this south platform was the means of passing from one to the other. On the west side of the station house was a brick platform or walk level with the surrounding ground, and therefore north of and four or five steps lower than the south wooden platform, and a set of wooden steps was the means of passage between these two platforms. On the 11th day of January, most of the work was done on the east side of the station house, but enough work was done south and west of it to clear a passage way on the platforms. Plaintiff testified it was impossible to remove all the ice and snow. Plaintiff testified that he did no work on Saturday south or west of the platform. On the 13th of January, this crew began work on the south platform, and plaintiff worked there until about 11:20 a. m., when the accident occurred. Plaintiff started from this south platform to the station house, via the west platform or walk, to get a drink of water and after he reached the west platform or walk he fell and broke his hip. The condition of this platform, excluding the ice and snow, as described by him was as follows: It began about even with the south end of the station house and proceeded north along the west side of the station house; it was about six feet, more or less, in width and had a perceptible slope from the foundation of the station house toward its outer edge, or the west; it was composed of brick laid on their flat side as bricks are usually laid; along the west border of this walk was a curb, composed of brick laid lengthwise, east and west, and on their narrowest side, thereby making this curb separate and perceptibly distinguishable from the walk; that when this platform was first constructed it was probably level with the surrounding ground and as traffic had tended to lower the ground, cinders or other similar material had been used in an effort to keep the ground practically level with the curb; but that the walk between the curb and the station house had been depressed, broken, and deteriorated by reason of the following facts: A door from the baggage room of said station house opened to the west on this walk. It was customary to run heavy four-wheel baggage trucks out of this room over said walk to waiting vehicles at the curb. It had also been customary for vehicles of all types, calling for and delivering baggage, mail, etc., to back against, on to and over the curb and on this walk. That this course of usage for a period of years had broken numbers of the bricks in the walk, had worn ruts in said walk and left that portion of said walk in a rough and uneven condition. Plaintiff testified that when he reached this portion of the walk he stubbed his toe against a brick, which he said was protruding about an inch or an inch and a half around the surrounding bricks, and fell, inflicting the injuries of which he complains. There was evidence that this walk had been partially cleared on the Saturday previous, but that rain and mist falling afterwards had frozen on the walk and it was slick and slippery at the time of the fall.

Was there sufficient evidence upon the question of negligence of the defendant to

go to the jury? We must keep in mind that this is a federal statute we are applying, and in so doing we must look to the cases decided by the federal courts in construing the liability of the employers under this act. We are cited a decision of the Supreme Court of the United States in which the facts are fairly similar to the case we are considering, and in which the duty of an employer to furnish a reasonably safe place for the employees to work, under said act, is stated. In the case of M. P. Railway Co. v. Aeby, 275 U. S. 426, 72 L. Ed. 351, the facts as stated by the court are these:

"* * * She (the plaintiff) was petitioner's (the defendant) ticket agent at Morefield from March 20, 1919, until July 2, 1920; then she became the station agent at Magness and remained in that position until a few days after she was injured. She had charge of the station; did book work; sold tickets; handled mail, baggage, express, etc. (Here follows description of station house.) * * * The platform was made of 'chat', described as small gravel and crushed stone, * * * There were no gutters on the eaves and water falling from the roof made a depression or kind of ditch. The chat was loose and sloped toward the building, and some of the rain, falling on the patform, as well as the water from the roof, reached the depression under the eaves and drained past the steps to the west. The depression was about four inches deep; and, by reason of the slope, its bottom was about twelve inches lower than the highest part of the platform. The depression existed when respondent came to work at Magness, and in front of the steps it was about four feet square. That condition was caused by water and the passage of people going to and from the waiting room. When it rained, there accumulated in this and other depressions on the platform puddles of water, which gradually disappeared. By the time of the accident, the depression in front of the steps had become somewhat larger and deeper by reason of rains and constant use. Its surface was rough. No ice had formed there after respondent came. The platform was dry the evening before the accident. During the night it rained, froze and snowed. Respondent and another woman slept in the station. A train was due shortly after six in the morning. They got up about six; it was dark; respondent lit a lamp and also a lantern that was kept for use about the place. They went out and moved the truck from the west end of the building to a place near the track. The steps were covered with snow and ice. There were about three inches of snow on the platform; the truck was frozen to the ground and covered with ice. There was no light on the platform. The lamp and lantern were left inside, and it does not appear that either was placed to give light through the bay window, or otherwise, upon or about the steps or platform. Going out respondent stepped off the west end of the steps. When returning to the waiting room she approached from the north. There was ice under the snow immediately in front of the steps; she tripped on something rough, slipped, fell, and was injured." (Parentheses ours.)

In applying the law to these facts the Supreme Court of the United States said:

"This case is governed by the act and the applicable principles of common law as established and applied in federal courts. There is no liability in the absence of negligence on the part of the carrier. Seaboard Air Line v. Horton, 233 U. S. 492, 501, 58 L. Ed. 1062-1068, L. R. A. 1915-C, 1, 34 Sup. Ct. Rep. 635, Ann. Cas. 1915 B, 475, 8 N. C. C. A. 834; New York C. R. Co. v. Winfield, 244 U. S. 147, 150, 61 L. Ed. 1045, 1048, L. R. A. 1918-C, 439, 37 Sup. Ct. Rep. 546, Ann. Cas. 1917-D, 1139, 14 N. C. C. A. 680. Its duty in respect of the platform did not make petitioner an insurer of respondent's safety; there was no guaranty that the place would be absolutely safe. The measure of duty in such cases is reasonable care, having regard to the circumstances. Patton v. Texas & P. R. Co., 179 U. S. 658, 664, 45 L. Ed. 361, 364, 21 Sup. Ct. Rep. 275; Washington & G. R. Co. v. McDade, 135 U. S. 554, 570, 34 L. Ed. 235, 241, 10 Sup. Ct. Rep. 1044; Tuttle v. Detroit, G. H. & M. R. Co., 122 U. S. 189, 194, 30 L. Ed. 1114, 1116, 7 Sup. Ct. Rep. 1166. The petitioner was not required to have any particular type or kind of platform or to maintain it in the safest and best possible condition. Baltimore & O. R. Co. v. Groeger, 266 U. S. 521, 529, 69 L. Ed. 419, 424, 45 Sup. Ct. Rep. 169. No employment is free from danger. Fault or negligence on the part of the petitioner may not be inferred from the mere fact that respondent fell and was hurt. She knew that it had rained and that the place was covered with ice and snow. Her knowledge of the situation and of whatever danger existed was at least equal to that chargeable against the petitioner. Petitioner was not required to give her warning. National Biscuit Co. v. Nolan, 70 C. C. A. 436, 138 Fed. 6, 12. It is a matter of common knowledge that almost everywhere there are to be found in public ways and on private grounds numerous places in general use by pedestrians that in similar weather are not materially unlike the place where respondent fell. Under the circumstances, it cannot reasonably be held that failure of petitioner to remove the snow and ice violated any duty owed to her. The obligation in respect of station platforms and the like owed by carriers to their passengers or to others coming upon their premises for the transaction of business is greater than that due their employees accustomed to work thereon. The reason is that the lat-

ter, familiar with the situation, are deemed voluntarily to take the risk of known conditions and danger. Tuttle v. Detroit, G. H. & M. R. Co., supra, (30 L. Ed. 1116, 7 Sup. Ct. Rep. 1166). The facts of this case, when taken most favorably to the respondent, are not sufficient to sustain a finding that petitioner failed in any duty owed to her."

Plaintiff attempts to distinguish between his case and that just quoted from, but we are unable to do so upon sufficiently substantial grounds. We are of the opinion that plaintiff's evidence is not sufficient to establish a violation of the duty defendant owed him to furnish him a safe place to work, as contemplated by said act. We must therefore reverse the judgment of the trial court.

Judgment reversed and cause remanded.

OSBORN, V. C. J., and BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., dissents. RILEY, J., absent.